UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM DESEAN MOORE,

        Plaintiff,                     Case No. 1:18-cv-1237

v.                                          Honorable Janet T. Neff

COLE FALES et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

    I.        Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility (KCCF). The events about which he complains occurred at that facility. Plaintiff sues Deputy Cole Fales, Lieutenant Lindsay Cole, Sergeant Unknown Knott, and Sergeant Unknown Fredrick.

In his amended complaint (ECF No. 8), Plaintiff alleges that he has been incarcerated at KCCF since May 9, 2018, and is serving a sentence of one-year, with four months credit, for a probation violation. Plaintiff's sentence includes a work release and he began working at the DPW Recycling Center on May 19, 2018. Near the end of May, another inmate named Kenneth Agnew was moved to the plastic line where Plaintiff was working. This move was made after prisoner Agnew made threats against a number of other inmates. During the following week, Agnew made a threat against Plaintiff after Agnew's girlfriend sat near Plaintiff outside the break room. Plaintiff subsequently told Defendant Fales about the threat. During the same conversation, Plaintiff asked Defendant Fales if he had seen Plaintiff's lunch. Defendant Fales then walked into the break room and said, "Williams [Plaintiff] said one of you took his lunch." Plaintiff asked Defendant Fales why he "thr[ew Plaintiff] under the bus like that." Defendant Fales warned Plaintiff not to "take that tone" because he could make things difficult for Plaintiff.

On June 25, 2018, Plaintiff was again threatened by prisoner Agnew. Plaintiff reported the threat to Defendant Fales, who pulled prisoner Agnew off the line. However, when Plaintiff returned to KCCF, Defendant Fales stated that he was removing Plaintiff from his work assignment and placing him back in the general population for lying. Plaintiff told Defendant Cole that he did not lie. When Plaintiff discovered that prisoner Agnew had also been bullying another inmate and had gotten the inmate removed from work release, he sent a kite complaining that he

2

had been wrongfully removed from his job assignment for reporting the threats. Defendant Knott responded to Plaintiff's kite by stating that Plaintiff had a bad attitude and would not be going back on work release. Plaintiff states that this is untrue and that the only Deputy he had problems with was Defendant Fales, and that was only based on the fact that he reported threats by prisoner Agnew.

Plaintiff sent a document to Captain Thorne indicating that he was going to file a lawsuit. Captain Thorne then came to see Plaintiff and told him that he was putting him back in work release doing work crew. Captain Thorne told Plaintiff that after a couple of weeks, he could go back to work at the DPW or with a temp service and would not have to pay the $150.00 deposit for work release. Plaintiff began working on the work crew and filled out applications for the temp services. Defendant Knott subsequently told Plaintiff that he had to prove himself for four to five weeks washing police cars before he would be given a job. When Plaintiff protested, Defendant Knott stated that "Kyle" at DPW had reported that Plaintiff had attitude problems and that he had engaged in "shenanigans." Plaintiff contends that this is a lie and that he did not have any behavior problems while at DPW. Plaintiff states that Defendant Knott is angry because of Plaintiff's willingness to go over his head and to file a lawsuit. Plaintiff further states that Defendant Knott made up lies about him in order to justify the actions of Defendant Fales. Plaintiff states that while he was working at DPW, he was making approximately $2,000.00 a month and that Defendants' conduct has resulted in a loss of that income.

Plaintiff claims that Defendants' conduct violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory damages and injunctive relief.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants' conduct violated his due process rights when they caused him to be wrongfully terminated from his job at DPW and interfered with his ability to obtain new employment following the termination, as promised by Captain Thorne. Plaintiff seeks to be compensated for the loss of the income he would have earned if he had not lost his job at DPW. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3rd Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his job at DPW or the interference with his ability to get a new job after the termination.

Plaintiff claims that Defendant Fales' conduct in having Plaintiff removed from his DPW job and Defendant Knott's conduct in refusing to allow him to return to a job after Captain Thorne told Plaintiff that he could do so were motivated by a desire to retaliate against Plaintiff for reporting threats by prisoner Agnew and for threatening a lawsuit. Retaliation based upon a

5

prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that the protected conduct in this case was his verbal request for assistance with a threat by another prisoner. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Therefore, Plaintiff had a protected right to request assistance after he was threatened by another prisoner.

With respect to whether the actions were adverse, Plaintiff claims that while he was working at DPW, he was earning $2,000.00 a month, and that he is not making nearly that amount working on the work crew. The Court notes that there have been many district court decisions within this Circuit concluding that termination from prison employment in retaliation for engaging in protected conduct states a viable First Amendment claim. *See Walker v. Brewer*, No. 1:13-CV-349, 2014 WL 1117835, at *2 (W.D. Mich. Mar. 20, 2014) (concluding that firing from prison job is an adverse action); *Brown v. Johnson*, No. 2:10-cv-965, 2012 WL 32711 (S.D. Ohio Jan. 6, 2012) (concluding that the law is clearly established that "taking away an inmate's job assignment

in retaliation for the exercise of constitutional rights [is] itself a constitutional violation."); *McGough v. Corrections Corp. of Am.*, No. 1:07-0039, 2007 WL 3088213 (M.D. Tenn. Oct. 19, 2007) (rejecting the defendants' argument that the plaintiff-prisoner has no constitutional right to prison employment because "Plaintiff's allegations that Defendant Parrish denied him a job in reprisal for filing a grievance, denied him copies of his grievance, and denied him indigent supplies, are sufficient to state a claim against him."). Furthermore, in unpublished cases, the Sixth Circuit has held that termination of prison employment can amount to adverse action for purposes of a First Amendment retaliation claim. *See Walton v. Gray*, 695 F. App'x 144 (6th Cir. 2017) (noting that "[t]his court has indicated that loss of a prison job can constitute an adverse action for retaliation purposes") (citing *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005); *Shehee v. Luttrell,* 199 F.3d 295, 301 (6th Cir. 1999)); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (concluding that a threat to have a prisoner moved from a unit so that he would lose his job was "'capable of deterring a person of ordinary firmness' from exercising protected rights, the standard for adverse action"). Based on these authorities, the Court concludes that Plaintiff's loss of a desirable job constitutes an adverse action for purposes of a retaliation claim.

Plaintiff claims that the adverse action was motivated, at least in part, by his report of being threatened by another prisoner or by his threat to file a lawsuit. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*,

7

84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. Plaintiff alleges that after he reported the threat by prisoner Agnew, he was removed from his work release assignment. However, Plaintiff fails to allege specific facts showing that this action was motivated by a desire to retaliate against him. Plaintiff concedes that Defendant Knott told him that "Kyle" at DPW had reported that he had attitude problems and had engaged in "shenanigans." The Sixth Circuit has been reluctant to find that temporal proximity between the protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). Plaintiff merely alleges temporal proximity between his complaint regarding prisoner Agnew and Defendants' conduct. Such allegations are insufficient to state a retaliation claim.

Finally, the Court notes that Plaintiff fails to allege any facts showing wrongdoing on the part of Defendant Cole or Defendant Fredrick. It is a basic pleading essential that a plaintiff

attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff states that he told Defendant Cole that he was not lying when reporting the threat by prisoner Agnew. Plaintiff fails to set forth any additional allegations against Defendant Cole and fails to even mention Defendant Fredrick in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  February 19, 2019                    /s/ Janet T. Neff
                                             Janet T. Neff
                                             United States District Judge